IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**PEDRO J. AMARO**,

    Plaintiff,

vs.

                                                             No. 20-cv-1308

**NEW MEXICO CORRECTIONS DEPARTMENT;
CORIZON HEALTH, INC.; CENTURION
CORRECTIONAL HEALTHCARE OF NM;
DENTRUST NEW MEXICO P.C.; WEXFORD
HEALTH, INC.; DR. KAPIL GREWAL;
DR. BERNIDA IQBAL,**

    Defendants.

**COMPLAINT FOR MEDICAL NEGLIGENCE
AND CIVIL RIGHTS VIOLATION**

Plaintiff, Pedro Amaro, through undersigned counsel, alleges and complains as follows:

**I. PARTIES, JURISDICTION, AND VENUE**

1.    Pedro Amaro is a resident of Guadalupe County, New Mexico. The allegations herein occurred in Santa Fe County, New Mexico, and Guadalupe County, New Mexico.

2.  Defendant New Mexico Corrections Department (hereinafter "Defendant NMCD") is an agency of the State of New Mexico, which, at all times material hereto, oversaw the management of statewide corrections facilities, including Penitentiary of New Mexico and Guadalupe County Correctional Facility.

3.  Defendant Corizon Health, Inc. (hereinafter "Defendant Corizon"), is a foreign corporation authorized to do business and doing business in the State of New Mexico and was contracted with Defendants NMCD during times material hereto.

4.    At all times material hereto, Defendant Corizon acted through its owners, officers, directors, employees, agents or apparent agents, including but not limited to administrators,

1

management, supervisors, technicians and other staff personnel and are responsible for their acts or omissions pursuant to the doctrines of *respondeat superior,* agency or apparent agency.

5.   Defendant Centurion Correctional Healthcare of NM (hereinafter "Defendant Centurion") is a New Mexico corporation contracted with Defendants NMCD for the provision of healthcare at New Mexico prison facilities during the times material hereto.

6.   At all times material hereto, Defendant Centurion acted through its owners, officers, directors, employees, agents or apparent agents, including but not limited to administrators, management, supervisors, technicians and other staff personnel and are responsible for their acts or omissions pursuant to the doctrines of *respondeat superior,* agency or apparent agency.

7.   Defendant Dentrust New Mexico, P.C. (hereinafter "Defendant Dentrust") is a New Mexico corporation contracted with Defendants Corizon and Centurion for the provision of dental care at New Mexico prison facilities during the times material hereto.

8.   At all times material hereto, Defendant Dentrust acted through its owners, officers, directors, employees, agents or apparent agents, including but not limited to administrators, management, supervisors, technicians and other staff personnel and are responsible for their acts or omissions pursuant to the doctrines of *respondeat superior,* agency or apparent agency.

9.   Defendant Wexford Health, Inc. (hereinafter "Defendant Wexford"), is a foreign corporation authorized to do business and doing business in the State of New Mexico and was contracted with Defendants NMCD during times material hereto.

10.   At all times material hereto, Defendant Wexford acted through its owners, officers, directors, employees, agents or apparent agents, including but not limited to administrators, management, supervisors, technicians and other staff personnel and are responsible for their acts or omissions pursuant to the doctrines of *respondeat superior,* agency or apparent agency.

11. Defendant Dr. Kapil Grewal, at all times material hereto, was a dentist, employed by Defendant Dentrust which contracted with Defendants Corizon and Centurion to provide dental care for inmates of Defendant NMCD.

12. Defendant Dr. Bernida Iqbal, at all times material hereto, was a dentist, employed by Defendant Dentrust which contracted with Defendants Corizon and Centurion to provide dental care for inmates of Defendant NMCD.

13. Defendants are jointly and severally liable for the acts and omissions which caused damages to Plaintiff.

14. Given the above, jurisdiction and venue are proper.

## II. GENERAL ALLEGATIONS

15. In December of 2016, Plaintiff Amaro, then an inmate at Penitentiary of New Mexico in Santa Fe, NM, was chewing a piece of bread when he felt a "pop" in his upper left bicuspid (#13) followed by a sharp pain. Exploring the area with his tongue, he tasted blood and felt a depression in the tooth, indicating to him that the acrylic filling had broken and become dislodged.

16. At his request, Mr. Amaro was seen by a dentist and dental hygienist in the facility who took x-rays of the tooth.

17. The dentist inspected the tooth but insisted that he did not see any problems.

18. Mr. Amaro was seen several times in the following months by other dentists, all of whom insisted that there was no problem with the tooth, despite the continued pain and discomfort.

19. In late August or early September of 2017, Mr. Amaro was seen again. This time, the dentist acknowledged that the acrylic filling had in fact broken and was in two pieces.

20. The dentist (name currently unknown) told Mr. Amaro that he needed a root canal but that he was not "authorized" to do root canals.

21. The dentist instead injected him with Novocain, re-filled the area, and stated that he "hoped it would work."

22. Within days of having the tooth re-filled, a pus bubble appeared on Mr. Amaro's gums on or near the site of the Novocain injection. The pus bubble was accompanied by severe swelling and considerable pain and discomfort.

23. Withing days of the appearance of the pus bubble, Mr. Amaro was seen by a visiting dentist. This dentist drained the fluid from the pus bubble. He then told Mr. Amaro that the swelling and the pus bubble were actually a "fistula" caused by an acute infection at the root of the tooth and that the pus, having nowhere else to go, had forced its way through Mr. Amaro's jaw to the outside of his gums.

24. Fearing the possibility that his tooth would end up being pulled, Mr. Amaro took great care of the area and chewed exclusively on the right side of his mouth. He drained the pus from the fistula regularly and brushed his teeth every couple of hours to combat the bad taste and bad breath caused by the infection and the presence of the pus.

25. On November 24, 2017, Mr. Amaro was seen by a dentist again. This dentist told him that, given the length of time the infection/fistula had lasted, it was not likely to go away on its own.

26. That dentist told Mr. Amaro that, if he were getting released soon, he could wait and have root canal performed by a dentist outside the prison system which would save the tooth, but that he was not authorized to perform the needed root canal.

27. The hygienist at that time, Ms. C. Romero, added "we don't do root canals."

28. On or about November 24, 2017, Mr. Amaro submitted an "Informal Complaint" addressed to the Grievance Department requesting access to an outside dentist to perform the root canal.

29. Mr. Amaro never received a response to that complaint.

30. On December 16, 2017, Mr. Amaro was seen for a follow-up appointment, this time by Defendant Grewal.

31. Defendant Grewal asked, "are we ready to pull it?" Mr. Amaro reiterated that he objected to having the tooth pulled and insisted on having a root canal to save the tooth.

32. The hygienist, Ms. C. Romero, interrupted, again saying "we don't do root canals." Mr. Amaro stated that an "extraction-only policy" was unconstitutional. Ms. Romero denied that there was such a policy but continued to say, "we don't do root canals."

33. After taking additional x-rays, Defendant Grewal expressed his belief that the infection was growing and that it would soon spread to the surrounding teeth.

34. Faced with the possibility of losing even more teeth, Mr. Amaro felt compelled go along with the extraction, and agreed.

35. Mr. Amaro also felt that he could not think clearly about his options due to the pain, swelling, and discomfort associated with the pus bubble.

36. Defendant Grewal then performed the extraction, which itself was long and painful and Defendant Grewal stopped for breaks repeatedly.

37. Mr. Amaro's lips and jaw were bruised and swollen for a considerable time after the procedure.

38. Immediately after the tooth was pulled, Mr. Amaro filed a second "Informal Complaint" regarding the extraction-only policy.

39. Mr. Amaro did not receive a response to this complaint either.

40. On January 2, 2018, based on the extraction and associated pain and discomfort, Mr. Amaro submitted a "Formal Grievance."

41. A prison employee known only as "Major Aragon" came to the pod to discuss the complaints with Mr. Amaro and left promising to investigate the situation.

42. On or about January 15, 2018, Mr. Amaro had an appointment to have a "partials impression" and was told that the hole created by the extraction was still too large to get an accurate impression.

43. On February 24, 2018, Mr. Amaro drafted a "Notice of Claim" and submitted the original to the New Mexico Risk Management Division and a copy each to The GEO Group, Inc., and Centurion Correctional Healthcare of New Mexico.

44. On or about March 8, 2018, and again on or about April 12, 2018, impressions were taken as part of the process of making dentures.

45. On March 15, 2018, Mr. Amaro sent "Inmate Requests" to ACA Compliance Monitor A. Campos and NMCD Contract Monitor Y. Rivera.

46. Mr. Amaro received no response to either of those requests.

47. On or about June 28, 2018, Mr. Amaro received an "upper partial," which was adjusted and fitted by Defendant Dr. Bernida Iqbal.

48. By August of 2018, the retaining wire of the partial had worn through the enamel on the adjacent tooth, causing additional pain and discomfort.

49. On September 23, 2018, Mr. Amaro again submitted an "Informal Complaint" on the subject of his dental care and again received no response.

50. On or about September 30, 2018, Mr. Amaro was seen by Defendant Iqbal again, who stated that a crown was needed to properly repair the damage to the adjacent tooth but that crowns were not authorized.

51. Instead, Defendant Iqbal, filled the hole in the adjacent tooth as if it were an ordinary cavity.

52. As a result, that tooth became very sensitive to hot and cold. On or about October 15, 2018, Defendant Iqbal told Mr. Amaro that the tooth could remain sensitive for up to five months because the root had died.

53. On October 10, 2018, Mr. Amaro submitted another "Formal Grievance" on the issue of his dental problems and still received no response.

54. The "partial" provided to Mr. Amaro to fill the space left by the extraction does not fit securely and comfortably and, to this day, presents him with a number of ongoing problems, including:

   a. Facial disfigurement including a sunken look on his left side where the tooth once was.

   b. An inability to eat many foods, including crunchy foods like carrots and nuts which break into small pieces that become lodged between the prosthetic and the roof of his mouth, and chewy foods that either partially or entirely dislodge the prosthetic.

   c. Speech problems including a "lisp," and an inability to whistle or sing.

   d. Embarrassment and discomfort on his periodic visits with family and friends due to the disfigurement, the speech problems, and an inability to share food.

e. A burdensome hygiene routine which includes removing the prosthetic four times a day to clean it of food and debris and to brush the surrounding area as well as nightly storage and cleaning.

f. Suspicion from prison officials, based the constant removal and adjustment of the prosthetic, that he is hiding contraband, creating constant tension and worry for Mr. Amaro.

### III. CLAIMS FOR RELIEF

#### COUNT ONE: Negligence of Defendant Grewal

55. Plaintiff incorporates and adopts by reference all the facts and allegations contained in this Complaint for purposes of this claim.

56. Defendant Grewal held himself out as a licensed dentist and undertook care for Mr. Amaro as a dentist. He was under a duty to possess and apply the knowledge, skill, and care ordinarily used by reasonably a well-qualified dentist practicing under similar circumstances, giving due consideration to the locality involved.

57. Defendant Grewal was negligent in the care, management, and treatment of Mr. Amaro.

58. By pulling the tooth rather than performing the root canal that he knew should have been done instead, Defendant Grewal failed to apply the knowledge, skill, and care ordinarily used by reasonably well-qualified practicing dentists under similar circumstances.

59. Such acts or omissions include but are not limited to: negligence in his care, management, and treatment of Mr. Amaro; failing to recognize, treat, and evaluate Mr. Amaro's condition in direct contradiction of his duties as a dentist, and any other manner revealed in discovery.

60. Defendant Grewal's negligent care, management, and treatment of Mr. Amaro caused Mr. Amaro's pain, suffering, and damages.

61. Defendant Grewal's actions were willful, wanton, reckless, and at the very least constitute gross negligence which give rise to punitive damages being awarded against him.

## COUNT TWO: Negligence of Defendant NMCD

62. Plaintiff incorporates and adopts by reference all the facts and allegations contained in this Complaint for purposes of this claim.

63. Defendant NMCD, which contracts with GEO Group to operate Guadalupe County Correctional Facility, is liable for the acts of their contractors and employees, including but not limited to, the named Defendants herein.

64. Defendant NMCD and its staff were operating under a duty to all inmates, including Plaintiff herein, to ensure that its contractors fully abide by their contracts and audits as well as possess and apply the knowledge, skill, and care ordinarily used by reasonably well-qualified medical facilities and medical providers practicing under similar circumstances, giving due consideration to the locality involved.

65. By failing to ensure that its contractors were applying the knowledge, skill, and care ordinarily used by reasonably well-qualified medical facilities and medical providers practicing under similar circumstances, Defendant NMCD's acts or omissions include, but are not necessarily limited to: negligent hiring, training, supervision, credentialing, evaluating, monitoring, or retention of healthcare employees, contractors, nurses and physicians on staff; inadequate or inappropriate policies and procedures and audits of contractors and staffing;

inadequate or inappropriate medical support and staffing; and any other manner revealed in discovery.

66. The negligence of Defendant NMCD and its employees, agents and apparent and/or ostensible agents was a cause of Plaintiff's damages.

### COUNT THREE: Negligence of Defendant Centurion

67. Plaintiff incorporates and adopts by reference all the facts and allegations contained in this Complaint for purposes of this claim.

68. Defendant Centurion, which contracted with NMCD to manage and provide medical care to inmates housed at Guadalupe County Correctional Facility, is liable for acts of their contractors and employees, including but not limited to, Defendant Grewal.

69. Defendant Centurion and its staff were under the duty to possess and apply the knowledge and to use the skill and care ordinarily used by reasonably well-qualified medical facilities, and medical providers practicing under similar circumstances, giving due consideration to the locality involved.

70. Defendant Centurion, acting through its employees, agents, apparent agents, or contractors failed to exercise ordinary care and failed to possess and apply the knowledge and to use the skill and care ordinarily used by reasonably well-qualified providers operating under similar circumstances, giving due consideration to the locality involved.

71. Such acts or omissions include, but are not necessarily limited to: negligent hiring, training, supervision, credentialing, evaluating, monitoring, or retention of healthcare employees, contractors, nurses and physician on staff; inadequate or inappropriate policies and procedures; inadequate or inappropriate medical support and/or staffing; and any other manner revealed in discovery.

72. Defendant Centurion, acting through their employees, agents, apparent agents, lor contractors, failed to exercise ordinary care and failed to possess and apply the knowledge and to use the skill and care ordinarily used by reasonably well-qualified healthcare providers, operating under similar circumstances, giving due consideration to the locality involved.

73. Such acts or omissions include but are not necessarily limited to negligence in the care, management, and treatment of Mr. Amaro; failing to appropriately respond to Mr. Amaro's emergency condition in direct contradiction of their duties as providers; and any other manner revealed in discovery.

74. The negligence of Defendant Centurion and its employees, agents and apparent and/or ostensible agents was a cause of Plaintiff's damages.

## **COUNT FOUR: Negligence of Defendant Corizon**

75. Plaintiff incorporates and adopts by reference all the facts and allegations contained in this Complaint for purposes of this claim.

76. Defendant Corizon which contracted with NMCD to manage and provide medical care to inmates housed at Guadalupe County Correctional Facility is liable for the acts of their contractors and employees, including but not limited to Defendant Grewal.

77. Defendant Corizon and its staff were under the duty to possess and apply the knowledge and to use the skill and care ordinarily used by reasonably well-qualified medical facilities, and medical providers practicing under similar circumstances, giving due consideration to the locality involved.

78. Defendant Corizon acting through its employees, agents, apparent agents, or contractors failed to exercise ordinary care and failed to possess and apply the knowledge and to use the skill

and care ordinarily used by reasonably well-qualified providers operating under similar circumstances, giving due consideration to locality involved.

79. Such acts or omissions include, but are not limited to negligent hiring, training, supervision, credentialing, evaluating, monitoring, or retention of healthcare employees, contractors, nurses, and physicians on staff; inadequate or inappropriate policies and procedures; inadequate or inappropriate medical support and/or staffing; and any other manner revealed in discovery.

80. Defendant Corizon, acting through their employees, agents, apparent agents, or contractors, failed to exercise ordinary care and failed to possess and apply the knowledge and to use the skill and care ordinarily used by reasonably well-qualified healthcare providers, operating under similar circumstances, giving due consideration to locality involved.

81. Such acts or omissions include but are not necessarily limited to negligence in the care, management, and treatment of Mr. Amaro; failing to appropriately respond to Mr. Amaro's urgent needs in direct contradiction of their duties as providers; and any other manner revealed in discovery.

82. The negligence of Defendant Corizon and its employees, agents and apparent and/or ostensible agents was a cause of Plaintiff's damages.

## COUNT FIVE: Negligence of Defendant Wexford

83. Plaintiff incorporates and adopts by reference all the facts and allegations contained in this Complaint for purposes of this claim.

84. At some point during Mr. Amaro's dental issues, NMCD contracted with Wexford from Centurion to manage and provide medical care to inmates housed at Guadalupe County

Correctional Facility, and Wexford is liable for the acts of their contractors and employees during that time, including Defendants Grewal and Iqbal.

85. Defendant Wexford and its staff were under the duty to possess and apply the knowledge and to use the skill and care ordinarily used by reasonably well-qualified medical facilities, and medical providers practicing under similar circumstances, giving due consideration to the locality involved.

86. Defendant Wexford, acting through its employees, agents, apparent agents, or contractors failed to exercise ordinary care and failed to possess and apply the knowledge and to use the skill and care ordinarily used by reasonably well-qualified providers operating under similar circumstances, giving due consideration to locality involved.

87. Such acts or omissions include, but are not limited to negligent hiring, training, supervision, credentialing, evaluating, monitoring, or retention of healthcare employees, contractors, nurses and physicians on staff; inadequate or inappropriate policies and procedures; inadequate or inappropriate medical support and/or staffing; and any other manner revealed in discovery.

88. Defendant Wexford acting through their employees, agents, apparent agents, or contractors failed to exercise ordinary care and failed to possess and apply the knowledge and to use the skill and care ordinarily used by reasonably well-qualified healthcare providers, operating under similar circumstances, giving due consideration to locality involved.

89. Such acts or omissions include but are not necessarily limited to negligence in the care, management, and treatment of Mr. Amaro; failing to appropriately respond to Mr. Amaro's urgent needs in direct contradiction of their duties as providers; and any other manner revealed in discovery.

90. The negligence of Defendant Wexford and its employees, agents and apparent and/or ostensible agents was a cause of Plaintiff's damages.

### COUNT SIX: Respondeat Superior

### (Against NMCD, Corizon, Centurion, Dentrust, Wexford– "Defendants")

91. Defendants NMCD, Corizon, Centurion, Dentrust, Wexford are liable for the actions, omissions, and negligence of their employees (including but not limited to Defendant Grewal), contractors, and agents as they employed them and as such are responsible under the legal theory of respondeat superior.

92. Defendant Dentrust is liable for the actions, omissions, and negligence of their contracted employee, Dr, Grewal, as they employed him and as such are responsible under the legal theory of respondeat superior.

### COUNT SEVEN: §1983 Eigth Amendment Violation –

### Failure to Provide Medical Care and Treatment

### (Against Corizon, Centurion, Dentrust, Wexford, and Grewal – "Defendants")

93. Plaintiff incorporates all other paragraphs of this Complaint for purposes of this claim.

94. At all times relevant to the allegations in this Complaint, Defendants acted or failed to act under color of state law.

95. Defendants are persons under 42 U.S.C. § 1983.

96. Defendants had a custom, policy, or practice of acting knowingly and with deliberate inference in denying obviously necessary medical and dental services to inmates at PNM and GCCF, including Mr. Amaro.

97. Defendants all knew of Mr. Amaro's on-going problems with his teeth.

98.     Nonetheless, with deliberate indifference to Mr. Amaro's Eighth Amendment constitutional right to be free of cruel and unusual punishment, these Defendants made no effort to obtain adequate and timely dental treatment for Mr. Amaro as alleged herein.

99.     Defendants not only ignored the obviously serious dental needs of Mr. Amaro but also placed him at risk of substantial physical harm and death.

100.    The acts and omissions of Defendants were within the scope of their official duties and employment.

101.    The acts and omissions of Defendants were the legal and proximate cause of Mr. Amaro's pain and suffering and damages.

102.    Defendants, both on their own and through their dentists, nurses, other health center staff, and administrators, had an official policy, custom, or practice that was deliberately indifferent to Mr. Amaro's Eighth Amendment rights.

103.    Defendant's unconstitutional policies, customs or practices were the legal and proximate cause of Mr. Amaro's pain, suffering and damages.

104.    The acts and omissions of each Defendant caused Mr. Amaro's pain, suffering and damages.

105.    Through the acts and omissions describes herein, Defendants intentionally deprived Mr. Amaro of the securities, rights, privileges, liberties, and immunities guaranteed by the United States Constitution, and caused his pain, suffering, and damages.

## IV. DAMAGES

106.    Plaintiff incorporates and adopts by reference all the facts and allegations contained in the preceding paragraphs of this Complaint.

107. As a direct and proximate result of the foregoing events, Pedro Amaro suffered extreme physical pain and suffering and mental anguish. Accordingly, Plaintiff is entitled to an award of damages including, but not limited to, the following specific items:

   a. Compensatory damages;

   b. The reasonable expenses of necessary medical care and treatment;

   c. The pain and suffering experienced;

   d. The mitigating or aggravating circumstances attending the wrongful act, neglect or default;

   e. Punitive damages;

   f. Attorney fees and costs; and

   g. Other damages contemplated by law in amounts to be determined at trial.

WHEREFORE, Plaintiff prays for judgement as follows: against Defendants for injuries and damages to Plaintiff in a sum to be determined and fixed by the trier of fact as to be fair and just, for compensatory damages; the reasonable expenses of necessary medical care and treatment; the pain and suffering experienced by Mr. Amaro; the mitigating or aggravating circumstances attending the wrongful act, neglect of default; punitive damages; attorney fees and costs; court costs, pre- and post-judgment interest, and all other appropriate relief.

Respectfully submitted,

HUGGINS & WERNERSBACH, P.C.

*/s/ Jennifer J. Wernersbach*
Jennifer J. Wernersbach
1201 Lomas Blvd. NW, Ste B
Albuquerque, NM 87102
Phone: (505) 595-3894
*Attorney for Plaintiff*