IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PEDRO AMARO,

    Plaintiff,

vs.                                                                      1:20-cv-01308-MV-LF

NEW MEXICO CORRECTIONS DEPARTMENT;
CORIZON HEALTH, INC.; CENTURION
CORRECTIONAL HEALTHCARE OF NM;
DENTRUST NEW MEXICO P.C.; WEXFORD
HEALTH, INC.; DR. KAPIL GREWAL;
DR. BERNIDA IQBAL,

    Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on defendant Centurion Correctional HealthCare of New Mexico's ("Centurion") Motion for Partial Dismissal for Failure to State a Claim, filed on April 6, 2021. Doc. 6. Plaintiff Pedro Amaro filed his response on April 19, 2021. Doc. 27. Centurion filed its reply on May 3, 2021. Doc. 35. The Honorable Senior District Judge Martha Vazquez referred this case to me to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case. Doc. 57. Having read the submissions of the parties and the relevant case law, I find that the motion is well-taken, and I recommend that the Court GRANT the motion to dismiss without prejudice and with leave to amend.

    **I.**    **Standard of Review**

In analyzing a motion to dismiss under Rule 12(b)(6), the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir.

2013).  A complaint fails to state a claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In other words, a complaint must include enough facts to state a claim to relief that is plausible on its face. *Id.* at 555–56.  The allegations must be sufficient to establish that, if true, "the plaintiff plausibly (not just speculatively) has a claim for relief."  *Corder v. Lewis Palmer School Dist. No. 38*, 566 F.3d 1219, 1224 (10th Cir. 2009) (internal quotation marks and citation omitted).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

The burden is on the plaintiff to frame "a complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief.  *Twombly*, 550 U.S. at 556.  Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief.  *Iqbal,* 556 U.S. at 679.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting FED. R. CIV. P. 8(a)(2)).

## II. Mr. Amaro's Complaint

### A. Facts[1]

In December of 2016, when Mr. Amaro was an inmate at the Penitentiary of New Mexico in Santa Fe, New Mexico, he was chewing a piece of bread when he felt a "pop" in his upper left bicuspid tooth followed by a sharp pain. Doc. 1 ¶ 15.  Exploring the area with his tongue, he

---

[1] The facts are derived from Mr. Amaro's complaint and are taken as true for the purposes of defendant's motion to dismiss. *Burnett*, 706 F.3d at 1235.

tasted blood and felt a depression in the tooth, indicating to him that the acrylic filling had broken and become dislodged. *Id*. At his request, Mr. Amaro was seen by a dentist and dental hygienist in the facility who took x-rays of the tooth. *Id*. ¶ 16. The dentist inspected Mr. Amaro's tooth but insisted he did not see any problems. *Id.* ¶ 17. Mr. Amaro was seen several times in the following months by other dentists, all of whom insisted that there was no problem with the tooth despite Mr. Amaro's continued pain and discomfort. *Id*. ¶ 18.

About eight months after discovering the broken filling, Mr. Amaro was seen again, and this time the dentist acknowledged that the acrylic filling had broken and was in two pieces. *Id*. ¶ 19. The dentist told Mr. Amaro that he needed a root canal but that the dentist was not "authorized" to do root canals. *Id*. ¶ 20. Instead, the dentist injected him with Novocain, re-filled the area, and stated that he "hoped it would work." *Id*. ¶ 21. Within days of having the tooth re-filled, a pus bubble, severe swelling, pain, and discomfort appeared on Mr. Amaro's gums at or near the site of the Novocain injection. *Id*. ¶ 22. Within days of the appearance of the pus bubble, a visiting dentist examined Mr. Amaro, drained the fluid from the pus bubble, and told Mr. Amaro he had a "fistula" caused by an acute infection at the root of his tooth. *Id*. ¶ 23.

Two months later, on November 24, 2017, yet another dentist examined Mr. Amaro and told him that given the length of time the infection/fistula had lasted, it would not likely go away on its own. *Id*. ¶ 25. This dentist told Mr. Amaro that if he was going to be released soon, he could wait and have a root canal performed by a dentist outside the prison system, which would save the tooth, but that he was not authorized to perform "the needed root canal." *Id*. ¶ 26. The dental hygienist at that time, Ms. Romero, added, "we don't do root canals." *Id*. ¶ 27.

Less than a month later, on December 16, 2017, defendant Dr. Kapil Grewal saw Mr. Amaro for a follow-up appointment. *Id*. ¶ 30. Dr Grewal is employed by defendant Dentrust

New Mexico, P.C. *Id.* ¶ 11. Dentrust contracted with Centurion to provide dental care at New Mexico prison facilities, including the Penitentiary of New Mexico where Mr. Amaro was an inmate. *Id.* ¶ 7. Dr. Grewal asked Mr. Amaro, "are we ready to pull it?" *Id.* ¶ 31. Mr. Amaro objected to having the tooth pulled and insisted on having a root canal to save the tooth. *Id.* Ms. Romero again stated, "we don't do root canals." *Id.* ¶ 32. Mr. Amaro stated that an "extraction-only policy" was unconstitutional. *Id.* Ms. Romero denied that there was such a policy but continued to say, "we don't do root canals." *Id.* Dr. Grewal took x-rays and opined that the infection was growing and would soon spread to the surrounding teeth. *Id.* ¶ 33. Faced with the possibility of losing more teeth, Mr. Amaro felt compelled to go forward with the extraction. *Id.* ¶ 34. Mr. Amaro could not think clearly about his options because of the pain, swelling, and discomfort. *Id.* ¶ 35. Dr. Grewal performed the extraction. *Id.* The extraction process was long and painful. *Id.* ¶ 36.

A month after the extraction, Mr. Amaro had an appointment to have a "partials impression" and was told that the hole created by the extraction was still too large to get an accurate impression. *Id.* ¶ 42. Impressions eventually were taken as part of the process of making a partial denture. *Id.* ¶ 44. On June 28, 2018, Mr. Amaro received an "upper partial," adjusted and fitted by defendant Dr. Bernida Iqbal.[2] Within a couple of months, the retaining wire of the partial had worn through the enamel on the adjacent tooth, causing Mr. Amaro pain and discomfort. *Id.* ¶ 48. Dr. Iqbal saw Mr. Amaro again and told him that a crown was needed to properly repair the damage to the adjacent tooth, but that crowns were not authorized. *Id.* ¶ 50. Instead, Dr. Iqbal treated the adjacent tooth by filling the hole as if it were an ordinary

---

[2] Mr. Amaro initially brought claims against Dr. Iqbal but dismissed those claims on July 21, 2021. Doc. 50.

4

cavity. *Id*. ¶ 51. The partial denture provided to Mr. Amaro does not fit securely or comfortably, and it presents him with a number of ongoing problems. *Id*. ¶ 54.

B. Mr. Amaro's Claims Against Centurion

Mr. Amaro brings claims against Centurion for negligence (Count 3), respondeat superior (Count 6), and a claim pursuant to 42 U.S.C. § 1983 for a violation of his Eighth Amendment right to be free from cruel and unusual punishment for the failure to provide medical care and treatment (Count 7). Centurion requests that the Court dismiss the § 1983 claim in Count 7 brought against Centurion. Doc. 6 at 8. As discussed below, Mr. Amaro fails to state a claim against Centurion for a violation of his Eighth Amendment rights because he fails to allege facts that show that Centurion promulgated or even knew about the extraction-only policy, or otherwise was itself deliberately indifferent to his dental needs. I therefore recommend that the Court grant the motion to dismiss Mr. Amaro's § 1983 Eighth Amendment claim against Centurion without prejudice and with leave to amend.

**III. Discussion**

A. 42 U.S.C. § 1983

A plaintiff cannot sue for damages directly under the U.S. Constitution, but instead must bring any claim for damages based on a constitutional violation under 42 U.S.C. § 1983. Section 1983 is the exclusive vehicle for vindication of substantive rights under the U.S. Constitution. *May v. Bd. of County Commissioners of Dona Ana County*, 426 F. Supp. 3d 1013, 1017–18 (D.N.M. 2019) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Section 1983 does not create any substantive rights, but merely provides the procedural mechanism for the enforcement of existing constitutional and federal statutory rights. *Nelson v. Geringer*, 295 F.3d 1082, 1097 (10th Cir. 2002). Section 1983 provides:

5

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

To state a claim for relief under § 1983, a plaintiff must establish (1) a violation of rights protected by the federal Constitution or created by a federal statute or regulation, (2) that was proximately caused (3) by the conduct of a "person," (4) who acted under color of any state statute, ordinance, regulation, custom or usage. *Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002). There must be a connection between the official conduct and the violation of a constitutional right. Conduct that is not connected to a constitutional violation is not actionable under § 1983. *See Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 2006). There is no dispute that Centurion was "acting under color of law" for the purposes of § 1983. *See generally* Doc. 6.[3]

A civil rights action against a public official or entity may not be based solely on a theory of *respondeat superior* or vicarious liability for the actions of co-workers or subordinates. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). A government entity cannot be held vicariously liable for the acts of its employees and agents under § 1983; the government entity may only be held liable for its own constitutional torts. *Id.* at 692–94. Consequently, a plaintiff must plead that each government official or entity, through the official or entity's own actions, violated the plaintiff's constitutional rights. *See Iqbal*, 556 U.S. at 676

---

[3] A company is a "state actor" for § 1983 purposes when it voluntarily assumes the obligation to provide medical services to inmates through a contract with the state. *See Khan v. Barela*, 2021 WL 107245, at *4–5 (D.N.M. Jan. 12, 2021) (collecting cases), report and recommendation adopted, *Khan v. Barela*, 2021 WL 371515 (D.N.M. Feb. 3, 2021); *see also West v. Atkins*, 487 U.S. 42, 48–56 (1988).

6

("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

    B.  <u>The Eighth Amendment</u>

The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. "The Eighth Amendment's prohibition of cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008). The Eighth Amendment creates an obligation on the part of prison officials to provide adequate health care to inmates. *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976). This obligation includes dental care. *Ramos v. Lamm*, 639 F.2d 559, 574 (10th Cir.1980). "Prisoners generally have more extensive dental problems than the average citizen. Consequently[,] dental care is one of the most important medical needs of inmates." *Id*. at 576.

The fact that a state must provide medical and dental treatment does not mean, however, that mere negligence in diagnosing or treating an inmate's medical condition gives rise to a valid constitutional claim under the Eighth Amendment. *Estelle,* 429 U.S. at 106. Rather, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id*. The test for constitutional liability of prison officials "involves both an objective and a subjective component." *Sealock v. Colorado,* 218 F.3d 1205, 1209 (10th Cir. 2000). The objective component is met when the deprivation of a medical need is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is sufficiently serious when it is one "that has been diagnosed by a physician as mandating treatment or one that is so

obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock*, 218 F.3d at 1209.  The subjective component is met when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  A prisoner must satisfy both the objective component and the subjective component of the deliberate indifference test.  *See Mata v. Saiz*, 427 F.3d 745, 751–52 (10th Cir. 2005).

Although a plaintiff may not like or agree with the treatment decisions made by prison staff, mere disagreement with the medical care provided is insufficient to state a cognizable constitutional claim for relief under § 1983.  Disagreements with the treatment provided by prison medical staff do not in themselves rise to the level of the deliberate indifference necessary to show a violation of the Eighth Amendment.  *See Perkins v. Kansas Department of Corrections*, 165 F.3d 803, 811 (10th Cir. 1999).

      1.  *Mr. Amaro's Complaint Satisfies the Objective Element.*

Analyzing whether the plaintiff has satisfied the objective element "requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such an injury to health will actually be caused." *Helling v. McKinney*, 509 U.S. 25, 36 (1993).  Courts also should consider "whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Id*.  "In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Id*.  A delay in medical treatment only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm.  *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001).  The substantial

harm requirement "may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Mata*, 427 F.3d at 751 (citing *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)). The allegations contained in the complaint demonstrate that Mr. Amaro suffered a medical need that was sufficiently serious.

Mr. Amaro alleges that in December of 2016, an acrylic filling had broken off of his left bicuspid and become dislodged. Doc. 1 ¶ 15. He was seen by a dentist and a dental hygienist at the Penitentiary of New Mexico who took x-rays but did not see any problems. Doc. 1 ¶¶ 16–17. After about eight months of continued pain and discomfort and dental visits, Mr. Amaro was seen by a dentist who acknowledged that the acrylic filling had in fact broken. *Id*. ¶ 19. The dentist told Mr. Amaro that he needed a root canal but that he was not authorized to perform root canals. *Id*. ¶ 20. Instead, the dentist numbed the area with Novocain and refilled the tooth, and "hoped it would work." *Id*. ¶ 21. Within days, Mr. Amaro developed a "pus bubble" that was accompanied by severe swelling and considerable pain and discomfort. *Id*. ¶ 22. Another dentist examined Mr. Amaro and told him that he was experiencing a "fistula" caused by an acute infection at the root of his tooth. *Id*. ¶ 23. Mr. Amaro did his best to care for the area but after a couple of months, in November 2017, a dentist examined him again and told him that the infection was not likely to go away on its own and that he needed a root canal to save the tooth. *Id*. ¶¶ 25–26. The dentist told Mr. Amaro that he was not authorized to perform "the needed root canal," and the dental hygienist confirmed, "we don't do root canals." *Id*. ¶¶ 26–27. Less than a month later, Dr. Grewal extracted Mr. Amaro's tooth. *Id*. ¶¶ 30–34. Mr. Amaro alleges that he suffered considerable pain between December of 2016—the date of his initial injury—and the date of the extraction of his tooth about a year later. *Id*. ¶¶ 15, 18, 22, 35, 36. The extraction itself was extremely painful and caused Mr. Amaro continued pain and discomfort, and resulted

in further tooth damage, facial disfigurement, an inability to eat certain foods, and speech problems. *Id.* ¶¶ 36–37, 48, 50–52, 54.

Mr. Amaro alleges a medical condition that was diagnosed by a dentist as mandating treatment. Although dentists did not immediately diagnose Mr. Amaro's broken enamel filling, a dentist eventually acknowledged that the filling was broken and that he needed a root canal. Further, reading the allegations in the light most favorable to Mr. Amaro, the extraction-only policy resulted in inadequate treatment and a delay in treatment which caused substantial harm, including considerable pain, an infection, a worsening condition, and ultimately, facial disfigurement. Mr. Amaro has alleged that he suffered a medical need that was sufficiently serious to establish the objective element of his Eight Amendment claim.

    2. *Mr. Amaro's Complaint Does Not Satisfy the Subjective Element.*

The second element regarding the government official's state of mind is a subjective inquiry. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Courts apply this subjective inquiry to determine whether the allegations are that a "short-term" or "one-time" violation occurred, or that "continuing" or "systemic" violations occurred. *Id.* at 299. The Supreme Court has stated: "With deliberate indifference lying somewhere between the poles of negligence at one end and purpose or knowledge at the other, the Courts of Appeals have routinely equated deliberate indifference with recklessness." *Farmer*, 511 U.S. at 836; *see also Belcher v. United States*, 216 F. App'x 821, 823–24 (10th Cir. 2007) (unpublished) (quoting *Smith*, 445 F.3d at 1258). The Court applies the following test to determine whether this subjective element is met:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

10

*Farmer*, 511 U.S. at 837.

Mr. Amaro does not allege that a specific person at Centurion knew of and disregarded his need for dental care. Mr. Amaro alleges that he submitted informal and formal complaints addressed to the "Grievance Department" requesting that a dentist perform a root canal. Doc. 1 ¶¶ 28, 38, 40, 49, 53. Mr. Amaro alleges that a prison employee, Major Aragon, came to his pod to discuss the complaints and left promising to investigate the situation. Doc. 1 ¶ 41. He further sent a Notice of Claim and Inmate Requests to ACA compliance monitor A. Campos and NMCD contract monitor Y. Rivera. *Id.* ¶ 45. Mr. Amaro does not allege, however, that any of the people he identifies are officers or employees of Centurion. Mr. Amaro further does not allege that his requests and complaints to the grievance department, Major Aragon, A. Campos, and Y. Rivera were known and ignored by Centurion. Centurion "contracted with Defendants NMCD for the provision of healthcare at New Mexico prison facilities." Doc. 1 ¶ 5. But Centurion did not run every aspect of the prison facility. Mr. Amaro does not allege that the grievance department or compliance monitors are employees or officers of Centurion, or that submitting complaints through the grievance process would put Centurion on notice.

Mr. Amaro further alleges that he told Dr. Grewal and Ms. Romero that an extraction-only policy was unconstitutional. *Id.* ¶ 32. But the allegations in the complaint make clear that Dr. Grewal and Ms. Romero are employees of defendant Dentrust, who contracted with Centurion to provide dental care; they are not employees of Centurion. *Id.* ¶¶ 7, 27, 31. Because Mr. Amaro does not name a person at Centurion who knew of and disregarded his health and safety, he fails to satisfy the subjective element of an Eighth Amendment claim.

C. "Municipal" Liability

The crux of Mr. Amaro's claim against Centurion is for an alleged "extraction-only" policy that Mr. Amaro claims violated his constitutional rights. Municipalities and other local governmental bodies are "persons" within the meaning of § 1983. *Bd. of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403–04 (1997) (citing *Monell*, 436 U.S. at 689). It is well settled that *Monell* also extends to private defendants sued under § 1983. *Smedley v. Corr. Corp. of Am.*, 175 F. App'x 943, 946 (10th Cir. 2005) (unpublished). As such, a private actor such as Centurion "cannot be held liable solely because it employs a tortfeasor—or, in other words . . . cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. Centurion "may only be held liable where [its] policies caused a constitutional violation." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003). To establish liability, a plaintiff must show 1) the existence of a policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged. *Hinton v. City of Elwood,* 997 F.2d 774, 782 (10th Cir. 1993). A defendant is not liable under § 1983 for constitutional violations when there was no underlying constitutional violation by any of its officers or agents. *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1317–18 (10th Cir. 2002).

Mr. Amaro alleges sufficient facts to establish the existence of a policy that the dentists at the Penitentiary were not permitted to perform root canals. In *Monell*, the Supreme Court stated that "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." 436 U.S. at 691. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id*. at 694. "The 'official policy'

requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). "A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision." *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 770 (10th Cir. 2013). To establish the causation element, the plaintiff must show that "the municipality was the 'moving force' behind the injury alleged." *Brown*, 520 U.S. at 404.

Mr. Amaro alleges that after a dentist acknowledged that his filling had broken, he told Mr. Amaro that he needed a root canal but that he was not "authorized" to do one. Doc. 1 ¶ 20. A couple of months later, a dentist told Mr. Amaro that the infection was not likely to go away on its own. *Id*. ¶ 25. The dentist told Mr. Amaro that if he was going to be released soon, he could get a dentist outside of the prison system to perform a root canal—which would save the tooth—but that he was not authorized to perform "the needed root canal." *Id*. ¶ 26. The dental hygienist confirmed, "we don't do root canals." *Id*. ¶ 27. When he went in for a follow up appointment with Dr. Grewal, he was told for a third time that "we don't do root canals." *Id*. ¶¶ 31–32. These allegations demonstrate that the dentists were working under a policy or custom that they were not authorized to perform root canals and could only offer extraction to try to resolve the infection in Mr. Amaro's tooth.

Mr. Amaro argues that the Court should draw the inference that "[t]hese communications evince that Centurion was on specific notice that, assuming such a formal or informal policy existed, Centurion either originated the policy or knew of it and allowed it to continue and that

13

Plaintiff himself had a serious dental condition which would be affected by such policy." Doc 27 at 5–6. The allegations do not support this inference. While it is clear that the dental staff did not perform root canals as a matter of policy, it is unclear as to where the policy came from. Mr. Amaro alleges that the dentists were employed by defendant Dentrust. Doc. 1 ¶¶ 11, 12. Mr. Amaro does not allege that Centurion formed, distributed, or required the dental staff to adhere to an "extraction-only" policy. It is unclear, therefore, whether the policy was formulated by Centurion or by Dentrust.[4] If the policy was formulated by Dentrust, Centurion cannot be held liable under a *respondeat superior* theory. Mr. Amaro does not point to any case law that establishes that Centurion is liable for the policies of the company it contracted with to provide dental services to prisoners. Because Mr. Amaro fails to allege that Centurion formulated or even knew of the "extraction-only" policy, the Court cannot draw the inference that it was a Centurion policy that was the moving force behind any alleged violation of Mr. Amaro's Eighth Amendment rights.

The parties disagree as to whether an extraction-only policy would necessarily implicate the Eighth Amendment in this case. *Compare* Doc. 6 at 6–9 *with* Doc. 28 at 5–7. Centurion argues that Mr. Amaro is not entitled to choose his preferred form of treatment, and that even if

---

[4] Mr. Amaro attempts to bolster his argument that Centurion is responsible for the extraction-only policy by pointing out that by contracting with NMCD, "Centurion agreed to provide a level of care consistent with NMCD's own policy" that states that "inmates shall receive a routine dental examination every twenty-four months and that 'oral treatment shall include, but not be limited to . . . root canal therapy.'" Doc. 27 at 6. This argument is misplaced for two reasons. First, there is no allegation in the complaint of what NMCD's policy was or what Centurion agreed to provide. Second, if Centurion agreed to provide care consistent with NMCD's policy, the reasonable inference could be drawn that the extraction-only policy was Dentrust's policy, not Centurion's. Mr. Amaro also argues that Centurion was on notice of the extraction-only policy based on a separate lawsuit filed by another inmate at the same facility that housed Mr. Amaro. *Id.* The complaint does not allege facts regarding the other lawsuit. *See* Doc. 1. The Court will not draw inferences from facts that are not alleged in the complaint. *See Iqbal*, 556 U.S. at 663, 679; *Twombly*, 550 U.S. at 556.

14

an extraction-only policy was in place, an appropriate alternative treatment was available. *See* Doc. 6 at 8. Mr. Amaro contends otherwise. Doc. 28 at 5–7. The parties primarily rely on two cases: *Stack v. McCotter*, F. App'x 383, 385–92 (10th Cir. 2003) (unpublished) and *Wilkens v. Ward*, 2007 WL 2407082, *4–7 (W.D. Okla. 1007) (unpublished).

Neither *Stack* nor *Wilkens* are binding on this Court. Nonetheless, the Court notes that at least one panel of the Tenth Circuit has held that an extraction-only policy may be constitutionally deficient. *See Stack*, 79 F. App'x at 390. Further, Mr. Amaro specifically alleges that the first dentist who correctly diagnosed him told him that he "needed" a root canal, but that the dentist was not authorized to do root canals. Doc. 1 ¶ 20. The dentist then performed a procedure that he "hoped [ ] would work," but it didn't. *See id.* ¶¶ 21–23. Instead, the procedure exacerbated the problem and caused an infection. *See id.* ¶¶ 22, 23. Yet another dentist told Mr. Amaro that this infection likely would not go away on its own, but this dentist also was not authorized to perform the "needed root canal." *Id.* ¶¶ 25, 26. Based on these allegations, the Court finds that this is not a situation in which the plaintiff simply disagrees with the recommended course of treatment and prefers something different. Mr. Amaro wanted the recommended treatment—a root canal, but the extraction-only policy prevented the dentists from performing that treatment. In short, Mr. Amaro was denied the recommended treatment. "Deliberate indifference to serious medical needs is shown when prison officials have prevented an inmate from receiving recommended treatment." *Ramos*, 639 F.2d at 575; *see also Carlucci v. Chapa*, 884 F.3d 534, 539–40 (5th Cir. 2018) (reversing district court's dismissal of pro se plaintiff's Eighth Amendment claim where plaintiff alleged that he wanted the recommended dental treatment, not a preferred alternative treatment). At the pleading stage, Mr. Amaro's

allegations that he was denied the recommended treatment is sufficient to state an Eighth Amendment claim.

## IV. Conclusion

Mr. Amaro's § 1983 claim against Centurion is deficient because he has failed to allege facts that show that Centurion promulgated the extraction-only policy, or was at least aware of that policy and did nothing about it, knowing that the policy could result in serious risk of harm to inmates. Mr. Amaro's complaint thus fails to state a plausible claim against Centurion for a violation of his Eighth Amendment rights pursuant to § 1983. I therefore recommend that the Court grant Centurion's request for dismissal of Mr. Amaro's claims against it in Count 7 of his complaint without prejudice. I further recommend that Mr. Amaro be allowed 60 days after the Court adopts this report and recommendation to file an amended complaint should he choose to do so.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). Written objections must be both timely and specific.** *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, **73 F.3d 1057, 1060 (10th Cir. 1996). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file timely and specific objections will result in waiver of** *de novo* **review by a district or appellate court.** *Id.* **In other words, if no objections are filed, no appellate review will be allowed.**

---

_____
Laura Fashing
United States Magistrate Judge