IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PEDRO AMARO,

    Plaintiff,

vs.

                                          No. 20-CV-1308 MV/LF

NEW MEXICO CORRECTIONS DEPARTMENT;
CORIZON HEALTH, INC.; CENTURION
CORRECTIONAL HEALTHCARE OF NM;
DENTRUST NEW MEXICO P.C.; WEXFORD
HEALTH, INC.; DR. KAPIL GREWAL;
DR. BERNIDA IQBAL,

    Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on defendant Dr. Kapil Grewal's Motion to Dismiss and to Stay Litigation and Supporting Memorandum filed on August 25, 2021. Doc. 53. Plaintiff Pedro Amaro filed his response on December 7, 2021. Doc. 59. Dr. Grewal filed his reply on December 21, 2021. Doc. 62. The Honorable District Judge Martha Vazquez referred this case to me to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case. Doc. 57. Having read the submissions of the parties and the relevant case law, I find that the motion is well-taken, and I recommend that the Court GRANT the motion to dismiss without prejudice and with leave to amend.

    **I.**     **Standard of Review**

In analyzing a motion to dismiss under Rule 12(b)(6), the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir.

2013). A complaint fails to state a claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, a complaint must include enough facts to state a claim to relief that is plausible on its face. *Id.* at 555–56. The allegations must be sufficient to establish that, if true, "the plaintiff plausibly (not just speculatively) has a claim for relief." *Corder v. Lewis Palmer School Dist. No. 38*, 566 F.3d 1219, 1224 (10th Cir. 2009) (internal quotation marks and citation omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

The burden is on the plaintiff to frame "a complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief. *Twombly*, 550 U.S. at 556. Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief. *Iqbal,* 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting FED. R. CIV. P. 8(a)(2)).

## II. Mr. Amaro's Complaint

### A. Facts[1]

In December of 2016, when Mr. Amaro was an inmate at the Penitentiary of New Mexico in Santa Fe, New Mexico, he was chewing a piece of bread when he felt a "pop" in his upper left bicuspid tooth followed by a sharp pain. Doc. 1 ¶ 15. Exploring the area with his tongue, he

---

[1] The facts are derived from Mr. Amaro's complaint and are taken as true for the purposes of defendant's motion to dismiss. *Burnett*, 706 F.3d at 1235.

tasted blood and felt a depression in the tooth, indicating to him that the acrylic filling had broken and become dislodged. *Id*. At his request, Mr. Amaro was seen by a dentist and dental hygienist in the facility who took x-rays of the tooth. *Id*. ¶ 16. The dentist inspected Mr. Amaro's tooth but insisted he did not see any problems. *Id.* ¶ 17. Mr. Amaro was seen several times in the following months by other dentists, all of whom insisted that there was no problem with the tooth despite Mr. Amaro's continued pain and discomfort. *Id*. ¶ 18.

About eight months after discovering the broken filling, Mr. Amaro was seen again, and this time the dentist acknowledged that the acrylic filling had broken and was in two pieces. *Id*. ¶ 19. The dentist told Mr. Amaro that he needed a root canal but that the dentist was not "authorized" to do root canals. *Id*. ¶ 20. Instead, the dentist injected him with Novocain, re-filled the area, and stated that he "hoped it would work." *Id*. ¶ 21. Within days of having the tooth re-filled, a pus bubble, severe swelling, pain, and discomfort appeared on Mr. Amaro's gums at or near the site of the Novocain injection. *Id*. ¶ 22. Within days of the appearance of the pus bubble, a visiting dentist examined Mr. Amaro, drained the fluid from the pus bubble, and told Mr. Amaro he had a "fistula" caused by an acute infection at the root of his tooth. *Id*. ¶ 23.

Two months later, on November 24, 2017, yet another dentist examined Mr. Amaro and told him that given the length of time the infection/fistula had lasted, it would not likely go away on its own. *Id*. ¶ 25. This dentist told Mr. Amaro that if he was going to be released soon, he could wait and have a root canal performed by a dentist outside the prison system, which would save the tooth, but that he was not authorized to perform "the needed root canal." *Id*. ¶ 26. The dental hygienist at that time, Ms. Romero, added, "we don't do root canals." *Id*. ¶ 27.

Less than a month later, on December 16, 2017, defendant Dr. Kapil Grewal saw Mr. Amaro for a follow-up appointment. *Id*. ¶ 30. Dr Grewal is employed by defendant Dentrust

3

New Mexico, P.C. *Id.* ¶ 11. Dentrust contracted with Centurion to provide dental care at New Mexico prison facilities, including the Penitentiary of New Mexico where Mr. Amaro was an inmate. *Id.* ¶ 7. Dr. Grewal asked Mr. Amaro, "are we ready to pull it?" *Id.* ¶ 31. Mr. Amaro objected to having the tooth pulled and insisted on having a root canal to save the tooth. *Id*. Ms. Romero again stated, "we don't do root canals." *Id.* ¶ 32. Mr. Amaro stated that an "extraction-only policy" was unconstitutional. *Id*. Ms. Romero denied that there was such a policy but continued to say, "we don't do root canals." *Id.* Dr. Grewal took x-rays and opined that the infection was growing and would soon spread to the surrounding teeth. *Id*. ¶ 33. Faced with the possibility of losing more teeth, Mr. Amaro felt compelled to go forward with the extraction. *Id*. ¶ 34. Mr. Amaro could not think clearly about his options because of the pain, swelling, and discomfort. *Id.* ¶ 35. Dr. Grewal performed the extraction. *Id*. The extraction process was long and painful. *Id*. ¶ 36.

A month after the extraction, Mr. Amaro had an appointment to have a "partials impression" and was told that the hole created by the extraction was still too large to get an accurate impression. *Id*. ¶ 42. Impressions eventually were taken as part of the process of making a partial denture. *Id.* ¶ 44. On June 28, 2018, Mr. Amaro received an "upper partial," adjusted and fitted by defendant Dr. Bernida Iqbal.[2] Within a couple of months, the retaining wire of the partial had worn through the enamel on the adjacent tooth, causing Mr. Amaro pain and discomfort. *Id.* ¶ 48. Dr. Iqbal saw Mr. Amaro again and told him that a crown was needed to properly repair the damage to the adjacent tooth, but that crowns were not authorized. *Id.* ¶ 50. Instead, Dr. Iqbal treated the adjacent tooth by filling the hole as if it were an ordinary

---

[2] Mr. Amaro initially brought claims against Dr. Iqbal but dismissed those claims on July 21, 2021. Doc. 50.

4

cavity. *Id*. ¶ 51. The partial denture provided to Mr. Amaro does not fit securely or comfortably, and it presents him with a number of ongoing problems. *Id*. ¶ 54.

    B. <u>Mr. Amaro's Claims Against Dr. Grewal</u>

Mr. Amaro brings claims against Dr. Grewal for negligence (Count 1) and a claim pursuant to 42 U.S.C. § 1983 for a violation of his Eighth Amendment right to be free from cruel and unusual punishment for the failure to provide medical care and treatment (Count 7). In his motion, Dr. Grewal requests that the Court dismiss Mr. Amaro's claims brought in Counts 1 and Count 7. As discussed below, Mr. Amaro consents to the dismissal of his negligence claim against Dr. Grewal. He also fails to state a claim against Dr. Grewal for a violation of his Eighth Amendment rights. I therefore recommend that the Court grant Dr. Grewal's motion to dismiss without prejudice and with leave to amend.

**III.   Discussion**

    A. <u>Mr. Amaro's Claim for Negligence (Count 1)</u>

In count 1, Mr. Amaro alleges that Dr. Grewal "was negligent in the care, management, and treatment of Mr. Amaro." Doc. 1 ¶ 57. Dr. Grewal asserts that regardless of whether Mr. Amaro is bringing his negligence claim against Dr. Grewal as a public or private actor, his negligence claim fails either because it is time-barred or because it fails to state a claim. Doc. 53 at 6–8. Mr. Amaro did not respond to this argument in his response. *See* Doc. 59. "The failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion." D.N.M.LR-Civ. 7.1 (b).[3] Because Mr. Amaro

---

[3] Mr. Amaro is currently appearing pro se. When pro se litigants fail to respond to a motion to dismiss, the "district court may not grant a 12(b)(6) dismissal based solely on the plaintiff's failure to respond. Instead, it must still examine the allegations in the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief can be granted." *Persik v. Manpower Inc*., 85 F. App'x 127, 130 (10th Cir. 2003) (unpublished) (internal citations and

failed to respond to Dr. Grewal's motion with regard to the negligence claim, he has consented to the Court granting the motion.  Accordingly, I recommend that the Court dismiss Count 1 of Mr. Amaro's complaint.

B. Mr. Amaro's Claim Under § 1983 (Count 7)

1. *42 U.S.C. § 1983*

A plaintiff cannot sue for damages directly under the U.S. Constitution, but instead must bring any claim for damages based on a constitutional violation under 42 U.S.C. § 1983.  Section 1983 is the exclusive vehicle for vindication of substantive rights under the U.S. Constitution. *May v. Bd. of County Commissioners of Dona Ana County*, 426 F. Supp. 3d 1013, 1017–18 (D.N.M. 2019) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  Section 1983 does not create any substantive rights, but merely provides the procedural mechanism for the enforcement of existing constitutional and federal statutory rights.  *Nelson v. Geringer*, 295 F.3d 1082, 1097 (10th Cir. 2002).  Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

To state a claim for relief under § 1983, a plaintiff must establish (1) a violation of rights protected by the federal Constitution or created by a federal statute or regulation, (2) that was proximately caused (3) by the conduct of a "person," (4) who acted under color of any state statute, ordinance, regulation, custom or usage.  *Summum v. City of Ogden*, 297 F.3d 995, 1000

---

quotations omitted).  When the response was filed, however, Mr. Amaro was represented, and the local rule therefore applies.

(10th Cir. 2002). There must be a connection between the official conduct and the violation of a constitutional right. Conduct that is not connected to a constitutional violation is not actionable under § 1983. *See Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 2006). It is well established that a physician employed by a state to provide medical services to state prison inmates acts under color of state law for purposes of § 1983. *West v. Atkins*, 487 U.S. 42, 54 (1988).

    2. *Qualified Immunity*

"Qualified immunity is an affirmative defense to a section 1983 action, providing immunity from suit from the outset." *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001) (quoting *Adkins v. Rodriguez*, 59 F.3d 1034, 1036 (10th Cir. 1995)). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Ullery v. Bradley*, 949 F.3d 1282, 1289 (10th Cir. 2020) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Once a defendant has asserted a qualified immunity defense, the burden shifts to the plaintiff to establish that: (1) the defendant violated a constitutional right; and (2) the right was "clearly established" at the time of the defendant's alleged misconduct. *Estate of Smart by Smart v. City of Wichita*, 951 F.3d 1161, 1168 (10th Cir. 2020). "[I]f the plaintiff fails to establish either prong of the two-pronged qualified-immunity standard, the defendant prevails on the defense." *A.M. v. Holmes*, 830 F.3d 1123, 1134–35 (10th Cir. 2016); *see also Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 877–78 (10th Cir. 2014) ("[T]he record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity.") (internal quotation marks omitted).

"Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). "Asserting a qualified immunity defense via a Rule 12(b)(6) motion, however, subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Id.* (quoting *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004)); *see also Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) ("At [the motion to dismiss] stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness.") (internal quotation marks omitted) (emphasis in original). "In resolving a motion to dismiss based on qualified immunity, the court considers (1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of [the] defendant's alleged misconduct." *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013) (internal quotation marks and citation omitted). The court has "discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Brown*, 662 F.3d at 1164 (internal quotation marks and alterations omitted).

    3.   *The Eighth Amendment*

The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. "The Eighth Amendment's prohibition of cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008). The Eighth Amendment creates an obligation on the part of prison officials to provide adequate health care to inmates. *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976). This obligation includes dental care. *Ramos v. Lamm*, 639 F.2d 559, 574

8

(10th Cir.1980). "Prisoners generally have more extensive dental problems than the average citizen. Consequently[,] dental care is one of the most important medical needs of inmates." *Id*. at 576.

The fact that a state must provide medical and dental treatment does not mean, however, that mere negligence in diagnosing or treating an inmate's medical condition gives rise to a valid constitutional claim under the Eighth Amendment. *Estelle,* 429 U.S. at 106. Rather, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id*. The test for constitutional liability of prison officials "involves both an objective and a subjective component." *Sealock v. Colorado,* 218 F.3d 1205, 1209 (10th Cir. 2000). The objective component is met when the deprivation of a medical need is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is sufficiently serious when it is one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock*, 218 F.3d at 1209. The subjective component is met when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. A prisoner must satisfy both the objective component and the subjective component of the deliberate indifference test. *See Mata v. Saiz*, 427 F.3d 745, 751–52 (10th Cir. 2005). Although a plaintiff may not like or agree with the treatment decisions made by prison staff, mere disagreement with the medical care provided is insufficient to state a cognizable constitutional claim for relief under § 1983. Disagreements with the treatment provided by prison medical staff do not in themselves rise to the level of the

9

deliberate indifference necessary to show a violation of the Eighth Amendment. *See Perkins v. Kansas Department of Corrections*, 165 F.3d 803, 811 (10th Cir. 1999).

        a)  Mr. Amaro's Complaint Satisfies the Objective Element.

Analyzing whether the plaintiff has satisfied the objective element "requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such an injury to health will actually be caused." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). Courts also should consider "whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Id*. "In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Id.* A delay in medical treatment only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm. *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001). The substantial harm requirement "may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Mata*, 427 F.3d at 751 (citing *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)). The allegations contained in the complaint demonstrate that Mr. Amaro suffered a medical need that was sufficiently serious.

Mr. Amaro alleges that in December of 2016, an acrylic filling had broken off of his left bicuspid and become dislodged. Doc. 1 ¶ 15. He was seen by a dentist and a dental hygienist at the Penitentiary of New Mexico who took x-rays but did not see any problems. Doc. 1 ¶¶ 16–17. After about eight months of continued pain and discomfort and dental visits, Mr. Amaro was seen by a dentist who acknowledged that the acrylic filling had in fact broken. *Id*. ¶ 19. The dentist told Mr. Amaro that he needed a root canal but that he was not authorized to perform root canals. *Id*. ¶ 20. Instead, the dentist numbed the area with Novocain and refilled the tooth, and

"hoped it would work." *Id*. ¶ 21.  Within days, Mr. Amaro developed a "pus bubble" that was accompanied by severe swelling and considerable pain and discomfort. *Id*. ¶ 22.  Another dentist examined Mr. Amaro and told him that he was experiencing a "fistula" caused by an acute infection at the root of his tooth. *Id*. ¶ 23.  Mr. Amaro did his best to care for the area but after a couple of months, in November 2017, a dentist examined him again and told him that the infection was not likely to go away on its own and that he needed a root canal to save the tooth. *Id*. ¶¶ 25–26.  The dentist told Mr. Amaro that he was not authorized to perform "the needed root canal," and the dental hygienist confirmed, "we don't do root canals." *Id*. ¶¶ 26–27.  Less than a month later, Dr. Grewal extracted Mr. Amaro's tooth. *Id*. ¶¶ 30–34.  Mr. Amaro alleges that he suffered considerable pain between December of 2016—the date of his initial injury—and the date of the extraction of his tooth about a year later. *Id*. ¶¶ 15, 18, 22, 35, 36.  The extraction itself was extremely painful and caused Mr. Amaro continued pain and discomfort, and resulted in further tooth damage, facial disfigurement, an inability to eat certain foods, and speech problems. *Id.* ¶¶ 36–37, 48, 50–52, 54.

      Mr. Amaro alleges a medical condition that was diagnosed by a dentist as mandating treatment.  Although dentists did not immediately diagnose Mr. Amaro's broken enamel filling, a dentist eventually acknowledged that the filling was broken and that he needed a root canal.  Further, reading the allegations in the light most favorable to Mr. Amaro, the extraction-only policy resulted in inadequate treatment and a delay in treatment which caused substantial harm, including considerable pain, an infection, a worsening condition, and ultimately, facial disfigurement.  Mr. Amaro has alleged that he suffered a medical need that was sufficiently serious to establish the objective element of his Eight Amendment claim.

11

The parties disagree as to whether an extraction-only policy would necessarily implicate the Eighth Amendment in this case. *Compare* Doc. 53 at 9–13 and Doc. 62 at 2–6 *with* Doc. 59 at 5–5. Dr. Grewal argues that Mr. Amaro is not entitled to choose his preferred form of treatment, and that numerous courts have upheld prison policies that deny inmates root canals. *See* Doc. 53 at 10–13; Doc. 62 at 3–6. Mr. Amaro contends that Dr. Grewal denied him the recommended treatment—a root canal—and that that is a constitutional violation. Doc. 59 at 4–5. Mr. Amaro primarily relies on *Stack v. McCotter*, F. App'x 383, 385–92 (10th Cir. 2003) (unpublished), and Dr. Grewal relies on numerous district court cases and some appellate cases outside the Tenth Circuit, none of which are binding on this Court. The Court notes, however, that at least one panel of the Tenth Circuit has held that an extraction-only policy may be constitutionally deficient under certain circumstances. *See Stack*, 79 F. App'x at 390.

The Court is not obligated to determine in the abstract whether an extraction-only policy is constitutionally impermissible. The question here is whether Mr. Amaro has alleged enough facts to show that the extraction-only policy violated his Eighth Amendment rights in this case. Mr. Amaro specifically alleges that the first dentist who correctly diagnosed him told him that he "needed" a root canal, but that the dentist was not authorized to do root canals. Doc. 1 ¶ 20. The dentist then performed a procedure that he "hoped [ ] would work," but it didn't. *See id.* ¶¶ 21–23. Instead, the procedure exacerbated the problem and caused an infection. *See id.* ¶¶ 22, 23. Yet another dentist told Mr. Amaro that this infection likely would not go away on its own, but this dentist also was not authorized to perform the "needed root canal." *Id.* ¶¶ 25, 26. Based on these allegations, the Court finds that this is not a situation in which the plaintiff simply disagrees with the recommended course of treatment and prefers something different. Mr. Amaro wanted the recommended treatment—a root canal, but the extraction-only policy

12

prevented the dentists, including Dr. Grewal, from performing that treatment. In short, Mr. Amaro was denied the recommended treatment. "Deliberate indifference to serious medical needs is shown when prison officials have prevented an inmate from receiving recommended treatment." *Ramos*, 639 F.2d at 575. At the pleading stage, Mr. Amaro's allegations that he was denied the recommended treatment are sufficient to establish the objective element of his Eighth Amendment claim. Mr. Amaro has failed, however, to allege enough facts to establish that Dr. Grewal, specifically, was deliberately indifferent to his serious medical needs.

      b)  Mr. Amaro's Complaint Does Not Satisfy the Subjective Element.

The second element regarding the government official's state of mind is a subjective inquiry. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Courts apply this subjective inquiry to determine whether the allegations are that a "short-term" or "one-time" violation occurred, or that "continuing," or "systemic" violations occurred. *Id.* at 299. The Supreme Court has stated: "With deliberate indifference lying somewhere between the poles of negligence at one end and purpose or knowledge at the other, the Courts of Appeals have routinely equated deliberate indifference with recklessness." *Farmer*, 511 U.S. at 836; *see also Belcher v. United States*, 216 F. App'x 821, 823–24 (10th Cir. 2007) (unpublished) (quoting *Smith*, 445 F.3d at 1258). The Supreme Court provided the following test for determining when this subjective element is met:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. "Deliberate indifference to serious medical needs is shown when prison officials have prevented an inmate from receiving recommended treatment." *Ramos*, 639 F.2d at 575; *accord Carlucci v. Chapa*, 884 F.3d 534, 539–40 (5th Cir. 2018) (reversing district

court's dismissal of pro se plaintiff's Eighth Amendment claim where plaintiff alleged that he wanted the recommended dental treatment, not a preferred alternative treatment).

Mr. Amaro alleges that after a dentist acknowledged that his filling had broken, he told Mr. Amaro that he needed a root canal but that he was not "authorized" to do one. Doc. 1 ¶ 20. A couple of months later, a dentist told Mr. Amaro that the infection was not likely to go away on its own. *Id*. ¶ 25. The dentist told Mr. Amaro that if he was going to be released soon, he could get a dentist outside of the prison system to perform a root canal—which would save the tooth—but that he was not authorized to perform "the needed root canal." *Id*. ¶ 26. The dental hygienist, Ms. Romero, confirmed, "we don't do root canals." *Id*. ¶ 27. When Mr. Amaro went in for a follow up appointment, Dr. Grewal asked, "are we ready to pull it?" *Id*. ¶ 31. Mr. Amaro reiterated that he objected to having the tooth pulled and wanted a root canal, but Ms. Romero again told Mr. Amaro, "we don't do root canals." *Id*. ¶¶ 31–32. Mr. Amaro said that an extraction-only policy was unconstitutional. *Id.* ¶ 32. Ms. Romero denied that there was an extraction-only policy but continued to say, "we don't do root canals." *Id*. After taking additional x-rays, Dr Grewal expressed the opinion that the infection was growing and that it would soon spread to the surrounding teeth. *Id*. ¶ 33. Mr. Amaro felt compelled to consent to the extraction. *Id*. ¶ 34.

Based on these allegations, the Court finds that the subjective element is not met. It is unclear from the allegations whether Dr. Grewal knew that the other dentists who treated Mr. Amaro recommended a root canal, and whether he himself recommended a root canal. Asking Mr. Amaro, "are we ready to pull it?" suggests that Dr. Grewal may have known Mr. Amaro's dental history and the previous dentists' recommendations, but the question is too ambiguous for the Court to draw that inference. The allegations against Dr. Grewal are sparse and do not show

14

that Dr. Grewal himself was deliberately indifferent to Mr. Amaro's serious medical needs. To establish deliberate indifference, Mr. Amaro must allege that Dr. Grewal knew of the recommended treatment—a root canal—and disregarded that recommended treatment, knowing that a substantial risk of serious harm could result from abiding by the extraction-only policy. Without allegations that Dr. Grewal himself knew that the recommended course of treatment was a root canal, the Court cannot conclude that he was deliberately indifferent to Mr. Amaro's serious medical needs. Consequently, Mr. Amaro's complaint fails to state a plausible claim against Dr. Grewal for a violation of Mr. Amaro's Eighth Amendment rights.

Having found that the allegations contained in Mr. Amaro's complaint do not plausibly state a claim that Dr. Grewal was deliberately indifferent to his serious medical needs, the Court need not determine whether Mr. Amaro's Eighth Amendment right was clearly established when Dr. Grewal extracted Mr. Amaro's tooth.

## IV.    Motion To Stay

Because Dr. Grewal raised the affirmative defense of qualified immunity, he requests that the Court stay discovery pending a decision on his motion to dismiss. Doc. 52 at 13. It is well settled that a qualified immunity defense "protects the official both from liability as well as from the ordinary burdens of litigation, including far-ranging discovery." *Workman v. Jordan*, 958 F.2d 332, 335 (10th Cir. 1992) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982)). The Supreme Court repeatedly has emphasized the importance of resolving the issue of qualified immunity early on in the litigation. *Scott v. Harris*, 550 U.S. 372, 376 n.2 (2007) (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)). The defense of qualified immunity does not create immunity from all discovery, but only from "broad-reaching discovery," and it recognized that "limited discovery may sometimes be necessary before the district court can resolve a

motion for summary judgment based on qualified immunity." *Crawford-El v. Britton*, 523 U.S. 574, 593 n.14 (1998) (quotation omitted). Standard practice in this district is to stay discovery—as to all defendants—when the defense of qualified immunity has been raised. *See Workman*, 958 F.2d at 336; *see also Herrera v. Santa Fe Pub. Schs.*, No. CIV 11-0422 JB/KBM, 2012 WL 6846393, at *10 (D.N.M. Dec. 20, 2012) (unpublished).

A review of the docket in this case reveals that no discovery has taken place since the briefing was complete on Dr. Grewal's motion. The Court has not issued a scheduling order, and the parties may not seek discovery until they have conferred pursuant to Federal Rule of Civil Procedure 26(f). It appears that a Rule 26(f) conference has not yet taken place. Furthermore, if the district judge adopts this report and recommendation, Dr. Grewal will be dismissed and will not be subject to discovery. At this point, the motion to stay is moot.

## V.     Conclusion

Mr. Amaro has consented to the dismissal of his negligence claim against Dr. Grewal (Count 1). The complaint also fails to state a plausible claim against Dr. Grewal for deliberate indifference to Mr. Amaro's serious medical needs in violation of his Eighth Amendment rights (Count 7). Finally, Dr. Grewal's motion to stay discovery is moot.

I recommend that the Court GRANT Dr. Grewal's motion to dismiss and DENY Dr. Grewal's motion to stay discovery as moot. I further recommend that the Court give Mr. Amaro 60 days to amend his complaint should he choose to do so.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). Written objections must be both timely and specific.** *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, **73 F.3d 1057, 1060 (10th Cir. 1996). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file timely and specific objections will result in waiver of** *de novo* **review by a district or appellate court.** *Id.* **In other words, if no objections are filed, no appellate review will be allowed.**

_____
Laura Fashing
United States Magistrate Judge